Robert R. AGNEW, Grant Inman, Johnnie B. Muldrew, Gordon L. Tohm, Anthony J. Udjur, and Albert B. Iben, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Penn Square National Bank, N. A., Longhorn Developmental Program, an Oklahoma limited partnership, Longhorn 1981 Private Drilling Program, an Oklahoma limited partnership, Longhorn Oil and Gas Company, Incorporated, a Delaware corporation, Longhorn Gas Programs, Inc., an Oklahoma corporation, Bill Jennings, Bill Patterson, Carl Swan, Wells Fargo Bank, American National Bank, Union Bank, and Bank of America NT & SA, Defendants.

Norman P. HINMAN, Roger M. Anderson, Charles R. Stout, William O. Meichtry, Harry M. Cornelsson, and Donald Mrachek, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Penn Square National Bank, N. A., Longhorn Developmental Program, an Oklahoma limited partnership, Longhorn 1981 Private Drilling Program, an Oklahoma limited partnership, Longhorn Oil and Gas Company, Incorporated, a Delaware corporation, Longhorn Gas Programs, Inc., an Oklahoma corporation, Bill Jennings, Bill Patterson, Carl Swan, Security Pacific Bank, and Bank of America NT & SA, Defendants.

Arthur J. SHARTSIS; Mary Jo Shartsis and Victor Horwitz, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Penn Square Bank, N. A.; Longhorn Developmental Program Ltd., an Oklahoma limited partnership; Longhorn Gas Programs, Inc., an Oklahoma corporation; Longhorn Oil & Gas Company, a Delaware corporation; Carl Swan; J. D. Al-

len; John D. Lang; the Bank of San Francisco and Union Bank, Defendants.

Nos. C 82–4452 SAW, C 82–4453 SAW and C 82–4501 SAW.

United States District Court, N. D. California.

Oct. 15, 1982.

Raymond N. Erlach, Hunt, Gram & Epstein, Shartsis, Friese & Ginsburg, Arthur J. Shartsis, Mary Jo Shartsis, Stewart H. Foreman, San Francisco, Cal., for plaintiffs.

David M. Furbush, Brobeck, Phleger & Harrison, Thedore Sachsman, Thomas H. Sloan, Jr., Bronson, Bronson & McKinnon, Broad, Khourie & Schulz, Robert R. Cross, San Francisco, Cal., for defendants.

## FINDINGS, CONCLUSIONS AND ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION

WEIGEL, District Judge.

Plaintiffs in these three related suits are investors in oil and gas exploration programs offered by defendant Longhorn Oil

and Gas Company during 1980 and 1981. Three categories of defendants are named in the suits. The first consists of a number of corporations and individuals allegedly involved in the offering of oil and gas exploration investments. They include Longhorn Developmental Program, Longhorn 1981 Private Drilling Program, Longhorn Oil and Gas Company Incorporated, Longhorn Gas Programs, Inc., Bill Jennings, Bill Patterson, Carl Swan, and J. D. Allen (the "Longhorn defendants"). The second consists of several California banks which issued letters of credit for the plaintiffs (the "issuing banks"). Finally, the Federal Deposit Insurance Corporation ("FDIC") is a named defendant in its capacity as receiver of Penn Square National Bank.

Plaintiffs' investments in the oil and gas exploration programs offered by the Longhorn defendants consist of a limited amount of cash and the balance in the form of personal notes secured by letters of credit issued by the issuing banks in favor of Longhorn Oil and Gas Company, Inc.'s bank, Penn Square National Bank. In July, 1982, Penn Square National Bank was declared insolvent by the United States Comptroller of Currency, and the FDIC was appointed receiver. As part of its duty to marshal the defunct bank's assets, the FDIC proceeded to call some of plaintiffs' letters of credit.

This suit is one of a number of similar lawsuits across the country.[1] Plaintiffs allege that they are victims of fraudulent investment schemes offered by the Longhorn defendants, in violation of the Securities Act of 1933, the Securities and Exchange Act of 1934, numerous other federal securities laws, California securities laws, and common law fraud and deceit. The gravamen of their complaint is that the Longhorn defendants grossly exaggerated the success of past exploration programs offered by Longhorn Oil and Gas Co., and thus fraudulently led plaintiffs to believe that their letters of credit would never have to be called by Penn Square National Bank to secure loans made by Penn Square to Longhorn Oil and Gas Co. to finance oil and gas exploration. The exploration program would be so successful, the Longhorn defendants allegedly asserted to plaintiffs, that proven oil and gas reserves would be sufficient security to the loans made by Penn Square to Longhorn Oil and Gas Co.

On August 26, 1982, the Court issued a Temporary Restraining Order preventing the issuing banks from paying on the letters of credit. Plaintiffs move for a preliminary injunction against the issuing banks. Plaintiffs in the *Shartsis* action also move for a preliminary injunction against the FDIC preventing it from calling their letters of credit. This order does not decide that motion.

In order to prevail on a motion for a preliminary injunction, a plaintiff must demonstrate

> either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.

*Los Angeles Memorial Coliseum Com'n. v. National Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980). Before determining whether plaintiffs have satisfied this burden, the Court must resolve (1) whether it has jurisdiction over all of the parties, and (2) what law governs the rights of parties involved in the letter of credit transactions in this case.

### I

The issuing banks assert that the Court lacks subject matter jurisdiction over

---

1. *See Forney v. Longhorn Oil & Gas Co.,* No. 82–73192, slip op. (E.D.Mich. Aug. 31, 1982) (preliminary injunction denied); *Geopet v. Longhorn Oil & Gas Co.,* No. 82–72567, slip op. (E.D.Mich. Aug. 31, 1982) (preliminary injunction denied); *Sopiea v. Longhorn Oil & Gas Co.,* No. 82–73138, slip op. (E.D.Mich. Aug. 31, 1982) (preliminary injunction denied); *Inland* *Foods, Inc. v. Exchange National Bank,* No. 82–CV0927 (El Paso Coun., Colo.); *Brown v. Citizens Bank,* No. 82–748, slip op. (San Juan Coun., N.M. May 17, 1982) (preliminary injunction granted); *Miller v. Longhorn Gas Programs, Inc.,* No. CV 81–08963 (Bernallio Coun., N.M.).

them. Their contention is without merit. There are at least two grounds for subject matter jurisdiction over the issuing banks. First, the issuing banks were involved in the transactions that plaintiffs assert caused them to be defrauded in violation of federal securities laws. Consequently, jurisdiction under those laws extends to the issuing banks. Second, jurisdiction exists pursuant to 28 U.S.C. § 1348, which grants district courts jurisdiction of "any civil action to wind up the affairs of any [national banking association] * * * * " Plaintiffs' claims against the issuing banks "[affect] the liquidation of an insolvent bank" just as much as do their direct claims against the FDIC. *Stevens v. Lowder,* 643 F.2d 1078, 1079–80 (5th Cir. 1981). *See Pearson v. Brennan,* 75 F.2d 958, 962 (1st Cir. 1935); *Crum v. Patterson,* 64 F.2d 263, 264 (3d Cir. 1933); 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3571, at 479 (1975) (federal jurisdiction exists under § 1348 even if suit does not involve receiver).

## II

Before examining the merits of plaintiffs' motions for a preliminary injunction, the Court must also determine what law governs the rights of the parties involved in the letter of credit transactions at issue here. The parties are not in agreement on this question. Defendants and the *Shartsis* plaintiffs contend that the applicable law is that of California, while the *Agnew* and *Hinman* plaintiffs assert that federal law should govern.

▇▇▇ Under the doctrine first announced in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state law generally applies where any gap in federal law exists. Federal rather than state law governs, however, in particular areas where national uniformity in the law is needed to protect certain federal interests. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Cases involving the rights of the FDIC implicate federal regulatory policy, and hence are governed by federal law. *See, e.g., D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *FDIC v. Meo,* 505 F.2d 790, 793 n. 4 (9th Cir. 1974); *Riverside Park Realty Co. v. FDIC,* 465 F.Supp. 305, 308–09 (M.D.Tenn.1978). Because no federal statute establishes a rule of decision in this case, the Court must turn to federal common law. One source of such law is state law. In fact, in cases governed by federal common law, state law frequently provides the appropriate federal rule of decision. *See e.g., Kimbell Foods, supra,* 440 U.S. at 729, 99 S.Ct. at 1459; *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68–71, 86 S.Ct. 1301, 1304–05, 16 L.Ed.2d 369 (1966); *Pankow Construction Co. v. Advance Mortgage Corp.,* 618 F.2d 611, 163–16 (9th Cir. 1980); *International Paper Co. v. Whitson,* 571 F.2d 1133, 1135 (10th Cir. 1977); C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4514, at 225–26 (1982).

Adoption of California law as the rule of decision governing the letter of credit transactions involved here is particularly appropriate. First, its application, which permits the FDIC to call the letters of credit and proceed to marshal the assets of Penn Square Bank, is entirely consistent with federal policy protecting bank depositors. *See, e.g., Kimbell Foods, supra,* 440 U.S. at 729, 99 S.Ct. at 1459 (adoption of state commercial codes that "furnish convenient solutions in no way inconsistent with adequate protection of the federal interest" desirable); *Pankow Construction, supra,* at 613–16. Second, the State of California has expressed a clear desire to prohibit courts from enjoining payment on letters of credit. *See* Cal.Comm.Code § 5114, comment 6. Absent a conflict between state law and federal interests, courts should "decline to override intricate state laws of general applicability on which private creditors base their daily commercial transactions." *Kimbell Foods, supra,* 440 U.S. at 729, 99 S.Ct. at 1459. Consequently, to the extent that federal law governs the instant case, the federal rule of decision is given by the applicable state law.

## III

■ Plaintiffs request an injunction against the issuing banks paying on the letters of credit. California law does not permit the issuance of such an injunction.

The Uniform Commercial Code, as adopted by California, does not permit an injunction against payment on a letter of credit. When the California legislature adopted the UCC in 1963, it made a significant change in the text of Section 5114, which deals with the duty and privilege of an issuer to honor a letter of credit. Section 5114(2) provides

(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7507) or of a security (Section 8306) or is forged or fraudulent or there is fraud in the transaction

(a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Section 7501) or a bona fide purchaser of a security (Section 8302); and

(b) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

The California legislature deleted the underscored words at the end of paragraph (2)(b) when it adopted the UCC. The reason for this significant omission is stated in the Official Comment to the California Commercial Code:

By giving the courts power to enjoin the honor of drafts drawn upon documents which appear to be regular on their face, the Commissioners on Uniform State Laws do violence to one of the basic concepts of the letter of credit, to wit, that the letter of credit agreement is independent of the underlying commercial transaction * * * * Preliminary Report of the [State Bar] UCC Subcommittee on Articles [Divisions] 1 and 5. Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary, (1959–1961), Part 1, The Uniform Commercial Code, p. 337.

Although the Official Comment also recognizes that the availability of an injunction "would give the customer protection he probably would not have under California law," *id.*, the legislature chose to delete the provision at the end of paragraph (2)(b) allowing such an injunction. The California legislature could not have spoken more clearly. The commercial viability of letters of credit depends on their ability to provide an assurance of payment. *See KMW Int'l v. Chase Manhattan Bank,* 606 F.2d 10, 16–17 (2d Cir. 1979); Cal.Comm.Code § 5114, comment 6; Harfield, *Enjoining Letter of Credit Transactions,* 95 Banking L.J. 596, 598–99 (1978). Consequently, to enjoin the issuing banks from paying on the letters of credit would directly contradict the intent of the legislature and erode the certainty that should accompany letter of credit transactions.

Because California law does not permit the issuance of a preliminary injunction in this case, plaintiffs fall far short of satisfying their burden. The foregoing constitutes the Court's findings of fact and conclusions of law. Consequently, plaintiffs' motions for a preliminary injunction must be denied.

Accordingly,

IT IS HEREBY ORDERED that all Temporary Restraining Orders heretofore issued in the above-captioned actions against Wells Fargo Bank, Bank of America, Security Pacific Bank, The Bank of San Francisco, American National Bank, and Union Bank are dissolved.

IT IS HEREBY FURTHER ORDERED that plaintiffs' motions for a preliminary

injunction against the issuing banks are denied.