Filed 12/17/13  Husain v. McDonald's CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SYED ALI HUSAIN et al.,<br><br>　　　Plaintiffs, Cross-defendants and<br>　　　Appellants,<br><br>v.<br><br>McDONALD'S CORPORATION, et al.,<br><br>　　　Defendants, Cross-complainants and<br>　　　Respondents. | A136623<br><br>(Marin County<br>Super. Ct. No. CIV096177) |

　　　This case returns to us after (1) an appeal in which this court affirmed an order granting Syed Ali Husain and Khursheed Husain (the Husains) a preliminary injunction allowing them to continue operating three McDonald's Corporation (McDonald's) restaurant locations during the pendency of this litigation (*Husain v. McDonald's Corp.* (2012) 205 Cal.App.4th 860 (*Husain I*)) and (2) a writ proceeding in which this court vacated portions of a September 21, 2012 order (the September 2012 order) granting terminating sanctions against the Husains (*Husain v. Superior Court* (Mar. 28, 2013, A136692) [nonpub. opn.] (*Husain II*)).[1]  The present appeal, stayed until the writ petition was decided, challenges other portions of the September 2012 order that (1) dissolved the preliminary injunction in favor of the Husains and (2) granted injunctive relief to McDonald's under which McDonald's took over control of the restaurant locations in

---

　　　[1] On our own motion we take judicial notice of our full opinions in *Husain I* and *Husain II*, and of the records before us in both proceedings.  (Evid. Code, § 452, subd. (d).)

issue from the Husains on September 25, 2012. We now affirm those portions of the September 2012 order.

## I. BACKGROUND

The Husains have owned McDonald's franchises since the early 1980's. By 2005, they held five McDonald's franchises in San Francisco and Daly City. In June 2005, the Husains entered into an agreement with third parties to purchase an additional seven McDonald's restaurants in Marin County. The underlying dispute in this case centers on whether McDonald's made an enforceable promise to the Husains to provide new 20-year franchises to them for three of the restaurants whose franchise terms were due to expire in 2009 and 2010. The Husains sued McDonald's to enforce the alleged promise, and McDonald's cross-complained to compel the Husains to restore the three disputed restaurants to McDonald's. Both sides moved for preliminary injunctions at the outset of the litigation, the Husains to prevent McDonald's from terminating their rights to operate the restaurant locations and McDonald's to force the Husains to cease operations at the three locations and vacate the premises. Following an evidentiary hearing, the trial court entered an order on December 20, 2010 granting a preliminary injunction allowing the Husains to continue operating the restaurants during the litigation, and denying McDonald's motion for a preliminary injunction (the December 2010 order).

### A. *Preliminary Injunction Ruling*

The trial court explained the basis for the December 2010 order as follows: " '[T]he ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to *minimize the harm which an erroneous decision may cause*.' [(*White v. Davis* (2003) 30 Cal.4th 528, 544.)] [¶] Although some of the evidence can be considered as supporting either the Husains' or . . . McDonald's contentions [as to the Husains' contractual right to new franchises], the court finds that there is a reasonable likelihood that the trier of fact will accept the Husain[s'] view of the evidence. . . . Perhaps more to the point, the balance of harms tips strongly in [the] Husain[s'] favor." (Underscoring omitted, italics added.) The trial court placed special significance in its consideration of the "reasonable likelihood" issue on Mr. Husain's testimony concerning assurances made

2

to him by McDonald's executives about obtaining franchise renewals, and his reliance on those assurances in agreeing to purchase the existing franchises with remaining terms of less than 10 years.  Regarding the balance of harms issue, the trial court relied on evidence, including Mr. Husain's testimony, that loss of the income from the three restaurants would jeopardize his entire business.

We affirmed the December 2010 order in *Husain I*.[2]  We emphasized that we do not reweigh the evidence in determining the validity of an injunction, but limit our review to determining if the trial court abused its discretion by exceeding the bounds of reason or contravening uncontradicted evidence, or based its ruling on a pure error of law as applied to undisputed facts.  (*Husain I, supra*, 205 Cal.App.4th at p. 867.)  With regard to the reasonable likelihood issue, we observed that the trial court's order "reflect[ed] nothing more than the trial court's evaluation of the controversy on the record before it at the time of its ruling . . . ."  (*Husain I* (Apr. 30, 2012, A131235, A131689) [nonpub. part of partially pub. opn.], p. 19.)  On the issue of the balance of harms, we deferred to the trial court's determination upon conflicting evidence that the Husains' loss of the income from the three restaurants jeopardized the entire business they had built up for the last 30 years, and exceeded any potential harm to McDonald's from granting an injunction in favor of the Husains.  (*Id*. at pp. 19–20.)

## B.  *McDonald's Sanctions Motions*[3]

In their original verified complaint, the Husains alleged as one basis for their breach of contract cause of action that McDonald's franchising manager, Jodi Breen, had offered in writing to renew the franchise terms for each of the three restaurants in January 2006 and that Mr. Husain had timely signed and mailed the Breen letters back to her indicating his willingness to accept the new terms on January 21, 2006.  McDonald's maintained Mr. Husain never communicated his acceptance of the offers contained in the Breen letters and the offers expired by their own terms.  In later sworn declarations, Mr.

---

[2] *Husain I* also affirmed a related order entered on February 16, 2011.

[3] This section is drawn from this court's decision in *Husain II, supra*, A136692.

Husain averred under penalty of perjury that he mailed the signed Breen letters back to Breen by delivering them for mailing to the Capuchino Station Post Office on January 21, 2006. He attached to his declarations a copy of a form United States Postal Service certificate of mailing filled out with Breen's mailing address and stamped with a Capuchino Station postmark dated January 21, 2006. Mr. Husain testified under oath to his timely mailing of the Breen letters in a deposition and at the preliminary injunction hearing.

McDonald's obtained evidence the Capuchino Station Post Office was in fact closed to customers on January 21, 2006, and it would have been impossible for Mr. Husain to mail the Breen letters from that office on that date.[4] Further, McDonald's obtained evidence the particular form of postmark stamp on the certificate of mailing Husain presented to the court did not exist in 2006 and was not in use until 2008. The Husains subsequently dropped the contract cause of action based on the Breen letters.

Based on its showing of apparent perjury and evidence fabrication, McDonald's moved for terminating sanctions against the Husains in June 2012. The Husains opposed the motion and produced contrary evidence. The trial court denied the motion for sanctions, finding McDonald's would at most be entitled to the dismissal of the cause of action the Husains had already dismissed, even if it found they had forged the certificate of mailing. The court also found there was a factual dispute about the asserted falsification.

Four weeks into a jury trial in this case, after the Husains completed their case-in-chief, McDonald's presented a renewed a motion for terminating sanctions, contending in part that Mr. Husain had (1) presented falsified invoices purporting to be from Blackrock Paving (Blackrock) and used the invoices to substantiate an overstated amount of

---

[4] When confronted with this evidence, Mr. Husain changed his account of what happened and stated he flagged down a letter carrier outside the post office on January 21 and got him to take his letter inside and stamp his certificate of mailing. McDonald's rebutted this story with evidence the necessary postal stamp could not have been accessed by an employee on that date.

investment expenses in response to an interrogatory asking him to itemize amounts he alleged he invested in his Marin franchises, and testified untruthfully about the documents during the trial; and (2) falsified the certificate of mailing pertaining to the Breen letters. As we observed in *Husain II*, by the time McDonald's brought its motion, it had cross-examined Mr. Husain extensively in the jury's presence about his statements and evidence concerning the Blackrock invoices and the Breen letters in an effort to destroy his credibility with the jury.

## C. *The September 2012 Order*

In its order granting terminating sanctions, the trial court stated: "After hearing Mr. Husain's testimony and having evaluated his credibility, the Court finds that [the Husains] have committed perjury and provided false evidence in discovery and in the trial." The court ordered terminating sanctions, finding no lesser sanction would be appropriate or would ensure compliance and a fair trial. In paragraphs Nos. 1 and 2 of its sanctions order, the court ordered the dismissal with prejudice of the Husains' third amended complaint, and the striking of their answer to McDonald's amended cross-complaint. These were the portions of the trial court's September 21, 2012 order that were in issue in *Husain II*.

The trial court also addressed the December 2010 order on the parties' injunctive relief requests, which was still in force, as follows: "The Order . . . granting Plaintiffs a Preliminary Injunction and denying Defendants' Motion is modified to dissolve the order granting Plaintiffs a Preliminary Injunction and to grant Defendants a Preliminary Injunction preventing Plaintiffs from continuing unlawfully to use McDonald's trademarks and occupy McDonald's restaurants *pending entry of a final judgment*." (Italics added.) The court explained that it found the Husains had no likelihood of success on the merits due to (1) the court's order striking the Husains' pleadings and (2) "the Court's assessment of Mr. Husain's credibility." Further, the court stated the Husains' previous claim of irreparable injury was entirely undercut by the Husains' stipulation read to the jury on September 6, 2012 that they had "sufficient assets to pay all of their

5

personal and business debt and expenses without the income from [the three restaurants McDonald's was seeking to recover from them]."

The court implemented its stated intention to modify the December 2010 order with the following specific orders: "3. Effective at midnight on September 25, 2012, the Order dated December 22, 2010[5] granting Plaintiffs a Preliminary Injunction is dissolved. [¶] 4. Effective at 12:01 a.m. on September 25, 2012, the Plaintiffs and their agents are preliminarily enjoined from 1) using McDonald's Proprietary Marks [or any other indicia] suggesting an affiliation with McDonald's at the Novato, 4th Street, and Merrydale Restaurant locations; and 2) occupying the Novato, 4th Street, and Merrydale Restaurant locations pending the entry of a final judgment on McDonald's Amended Cross-Complaint. [¶] 5. Effective at 12:01 a.m. on September 25, 2012, McDonald's USA, LLC shall have the right to own, occupy and operate the Novato, 4th Street, and Merrydale restaurant locations." (Hereafter referred to as paragraphs Nos. 3, 4 and/or 5.)

## D. Husain II

In *Husain II*, we directed the trial court to vacate the order striking the Husains' pleadings, and to enter a new and different order denying terminating sanctions, reinstating the Husains' pleadings, and setting the matter for a new trial. While we did not question the trial court's findings concerning the Husains' litigation misconduct, we found the circumstances did not demonstrate that any remedy short of dismissal would have been inadequate to preserve the fairness of the trial. We observed that the trial court "afforded McDonald's perhaps the most effective sanction of all—giving it wide latitude to expose Mr. Husain's fabrications and perjury to the jury through cross-examination." (*Husain II*, *supra*, A136692.)

We stayed all proceedings in the present appeal pending the decision in *Husain II*, and erroneously dismissed the appeal as moot upon the filing of the opinion in *Husain II*.

---

[5] As noted earlier, the December 2010 order was actually entered on December 20, 2010.

Following the Husains' petition for rehearing, we vacated the dismissal and lifted the stay by order entered on April 25, 2013.

## II. DISCUSSION

The Husains assert the injunctive relief portions of the September 2012 order must be reversed and the restaurant locations in issue restored to them because (1) *Husain II* eliminated the foundational underpinning for the trial court's finding of no likelihood of success on the merits; and (2) the trial court violated the Husains' due process rights and tainted the entirety of its rulings on injunctive relief by granting case-dispositive relief to McDonald's—tantamount to a declaratory judgment granting McDonald's the permanent injunctive relief sought in its cross-complaint—without permitting the Husains an evidentiary hearing they had requested on the authenticity of the Blackrock invoices.[6] We take up the latter argument first.

At the outset, we reject the Husains' premise that the September 2012 order granted permanent ("case-dispositive") injunctive relief to McDonald's. It did not. The court specified in its order that it was *modifying* the December 2010 preliminary injunction order to (1) "dissolve the order granting [the Husains] Preliminary Injunction," and (2) grant McDonald's "a *Preliminary* Injunction preventing [the Husains] from continuing unlawfully to use McDonald's trademarks and occupy McDonald's restaurants *pending entry of a final judgment*." (Italics added.) In paragraph No. 4 of the order it stated that as of September 25, 2012, the Husains were to be "*preliminarily* enjoined" from using McDonald's proprietary trademarks at the subject restaurant locations or occupying those locations "*pending the entry of a final judgment* on McDonald's Amended Cross-Complaint." (Italics added.) The court could not have been clearer in these paragraphs that it was granting McDonald's *preliminary* injunctive relief, not a permanent injunction or a premature declaratory judgment.

---

[6] We have no need to address the Husains' further argument that the unclean hands doctrine, cited as an alternative ground in the September 2012 order, is inapplicable.

The Husains would have us ignore all of the foregoing language and focus on the omission of the words "pending the entry of a final judgment" at the end of paragraph No. 5 of the order (stating McDonald's would have "the right to own, occupy and operate" the restaurant locations in issue as of September 25, 2012).[7] We decline to construe the order in that myopic fashion. The meaning and effect of a judicial order is determined according to the rules governing the interpretation of writings generally. (See *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 948–949.) The entire document is to be construed as a whole to effectuate the court's obvious intention. (*Id.* at p. 949.) We do not seize upon one sentence or clause of the ruling to destroy the remainder. (*Ibid.*) In our view it was unnecessary for the court to restate that it was providing interim relief in paragraph No. 5 of the order because that intention was manifest throughout the writing. Read together, paragraphs Nos. 4 and 5 merely specified that McDonald's rather than the Husains would have the right going forward to occupy and operate the subject McDonald's restaurant locations pending entry of a final judgment on McDonald's cross-complaint.[8]

We also find no merit in the Husains' contention that *Husain II* undercut the basis for the trial court's modification of its December 2010 preliminary injunction rulings. Trial courts possess the inherent power to modify a preliminary injunction. (*City of San Marcos v. Coast Waste Management, Inc.* (1996) 47 Cal.App.4th 320, 328; *New Tech Developments v. Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1071–1072.) The

---

[7] McDonald's already owned the locations. The underlying dispute concerns the Husains' right to operate McDonald's restaurants at the locations pursuant to a renewal of their franchise agreements for a new term.

[8] The Husains waived the arguments raised for the first time in their reply brief that paragraph No. 4 was also effectively a permanent injunction despite its form, and that the "case-dispositive" rulings assertedly made in paragraphs Nos. 4 and 5 of the order require a reversal in full. (*California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 862.) In any event, for the reasons already stated, we reject the premise of these arguments that the September 2012 order involved permanent injunctive relief of any kind. We deny as moot McDonald's motion to strike those portions of the Husains' reply brief.

8

decision to grant, deny, dissolve, or refuse to dissolve a preliminary injunction rests in the sound discretion of the trial court. (*Union Interchange, Inc. v. Savage* (1959) 52 Cal.2d 601, 606.) Such an order will not be modified or dissolved on appeal except for an abuse of discretion. (*Ibid.*)

We find no abuse of discretion here. The December 2010 order was based on evidence the balance of hardships in granting or denying the competing preliminary injunction motions weighed strongly in favor of protecting the Husains from apparent financial ruin, coupled with a reasonable probability a jury would believe Mr. Husain's representations concerning McDonald's promises to him over the substantial conflicting evidence. The hardship evidence was the major underpinning of the court's original order. That disappeared from the case when Mr. Husain stipulated at trial he could pay his debts and expenses without income from the three franchises. The Husains tacitly concede the stipulation by itself is sufficient to uphold the trial court's order dissolving the preliminary injunction it issued in favor of the Husains in 2010. (See *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286–287 [order denying preliminary injunction may be upheld if no abuse of discretion shown as to *either* likelihood of success or interim harm].) They nonetheless insist the trial court's finding regarding their likelihood of prevailing on the merits was an abuse of discretion.

According to the Husains, the trial court abused its discretion by failing to exercise it: "The trial court did not exercise discretion in finding no likelihood of success, but did so because of the terminating sanctions, which have now been nullified by the opinion in [*Husain II*]." (See *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 [failure to exercise discretion is an abuse of discretion].) The Husains maintain this asserted failure to exercise discretion, without regard to the trial court's finding of interim harm, requires reversal at a minimum of those portions of the order enjoining them from using McDonald's proprietary marks at the three restaurants and granting McDonald's the right to occupy and operate them pending entry of a final judgment (paragraphs Nos. 4 and 5). (See *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493

9

[appellate court must reverse order *granting* preliminary injunction if "the trial court has abused its discretion as to either factor"].)

The Husains again misread the trial court's order. The terminating sanctions imposed by the trial court were *not* its sole and exclusive basis for modifying the December 2010 preliminary injunction rulings. The order makes clear that the court also relied on its assessment of Mr. Husain's credibility to find the Husains had no likelihood of prevailing on the merits. It states: "Based on the Court's order dismissing the Third Amended Complaint and striking [the Husains'] Answer to [McDonald's] Amended Cross-Complaint *and the Court's assessment of Mr. Husain's credibility*, the Court finds that Plaintiffs have no likelihood of success on the merits and that Defendants/Cross-Complainants will and do succeed on the merits." (Italics added.) Immediately following that sentence, the order goes on to find and discuss why the Husains would "suffer [no] irreparable injury from loss of the three restaurants." If the injunctive relief portions of the September 2012 order rested solely on the terminating sanctions imposed without any discretionary weighing of likelihood of success, no "assessment of Mr. Husain's credibility" or consideration of irreparable injury would have been necessary.

We therefore find the trial court did exercise discretion in assessing the Husains' likelihood of success in the litigation. Nothing in *Husain II* undermined that assessment. We simply found this was not one of those rare cases in which any remedy short of dismissal was inadequate to preserve the fairness of the trial. The impeachment evidence McDonald's had amassed against Mr. Husain combined with the Husains' stipulation fully supported the trial court's September 2012 injunctive relief rulings**.**

10

## III.  DISPOSITION

With the exception of the terminating sanctions previously reviewed in *Husain II, supra,* A136692, the order of September 21, 2012 is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.